2013 OK CIV APP 31

**In the Matter of N.H.; B.D.; and O.H., Alleged Deprived Children.**

**Kayla Hammond, Natural Mother Of N.H.; B.D. and O.H., Appellant,**

v.

**The State of Oklahoma, Appellee.**

No. 110,852.

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 15, 2013.

Debra D. Loeffelholz, Norman, Oklahoma, for Appellant.

Rebecca Elaine Brink, Assistant District Attorney, Norman, Oklahoma, for Appellee.

Amelia Reccia, Norman, Oklahoma, for Minor Children.

ROBERT D. BELL, Judge.

¶ 1 Appellant, Kayla Hammond (Mother), appeals from the trial court's order entered upon a jury verdict terminating her parental rights. Mother argues Appellee, the State of Oklahoma (State), violated her due process rights when it moved to terminate Mother's parental rights pursuant to 10A O.S. Supp. 2009 § 1–4–904(B)(5), for her failure to timely correct the conditions which led to the children's deprived adjudication. Mother claims State should have proceeded under 10A O.S. Supp.2009 § 1–4–904(B)(13), the more specific statute for termination of parental rights, due to her mental illness. The trial court's order is affirmed.

¶ 2 Mother lived in a transitional center with N.H., born May 28, 2006, B.D., born November 20, 2008, and O.H., born September 30, 2010. All three children were developmentally delayed and O.H. was underweight and failed to bond with Mother. The Oklahoma Department of Human Services (DHS) applied took emergency custody of the children on December 14, 2010. DHS received a referral that Mother left her 4 year old and 2 year old children in the care of an unrelated 6 year old child while Mother went to a different apartment to shower and visit with her boyfriend.

¶ 3 State filed a petition seeking the adjudication of the minor children as deprived on December 21, 2010. State contended the children should be adjudicated deprived because Mother has a history of homelessness, illegal drug usage, leaving her children unattended and neglecting to obtain appropriate medical care for the children. Mother plead no contest to the deprived children petition and an order of adjudication was entered.

¶ 4 The Individualized Service Plan (ISP) entered February 23, 2011, identified the following conditions, among others, to be corrected: Mother was to provide a safe and stable home; she was not to leave the children alone without adequate appropriate supervision; she was to demonstrate proper parental decisions that do not result in placing the children at risk for harm; she was to demonstrate mental health stability; she was to complete parenting classes and schedule a mental health assessment and provide proof of income and residence. A ISP Dispositional Report noted that Mother had mental health concerns and that she lacked good judgment in regard to securing adequate and appropriate care for her children during Mother's absence. The ISP dated August 17, 2011, reiterated DHS's concerns about Mother's past substance abuse and how Mother's mental health will affect her sobriety. This ISP added, as a condition to be corrected, that Mother will refrain from abusing legal or illegal drugs and will participate in random urine analysis testing.

¶ 5 On November 22, 2011, State filed its application to terminate Mother's parental rights. Mother's mental illness was not cited as the ground in State's application to terminate her parental rights. Instead, State moved to terminate solely on § 1–4–904(B)(5). This section provides the court may terminate the rights of a parent to a child upon a finding that the parent has failed to correct the condition which led to the child's deprived adjudication, and the parent has been given at least three (3) months to correct the condition. A jury trial was held and the trial court entered a judgment upon a jury verdict terminating Mother's parental rights to the children pursuant to § 1–4–904(B)(5). Mother appeals from that order.

¶ 6 "In parental termination cases, the State must show by clear and convincing evidence that the child's best interest is served by the termination of parental rights." *In re C.D.P.F*, 2010 OK 81, ¶ 5, 243 P.3d 21, 23. We apply this standard of proof because it "balances the parents' fundamental freedom from family disruption with the state's duty to protect children within its borders." *Id.* (quotation omitted.)

¶ 7 On appeal, Mother contends State failed to prove by clear and convincing evidence that termination of her parental rights was in the best interests of the minor children. She also contends her due process rights were violated because State failed to seek termination under § 1–4–904(B)(13) [1]—

---

1. Section 1–4–904(B)(13) provides the court may terminate the rights of a parent to a child based upon a finding that all of the following exist:
   a. the parent has a diagnosed cognitive disorder, an extreme physical incapacity, or a medical condition, including behavioral health which renders the parent incapable of adequately and appropriately exercising parental rights, duties, and responsibilities within a reasonable time considering the age of the child, and

   b. allowing the parent to have custody would cause the child actual harm or harm in the near future.
   A parent's refusal or pattern of noncompliance with treatment, therapy, medication, or assistance from outside the home can be used as evidence that the parent is incapable of adequately and appropriately exercising parental rights, duties, and responsibilities.
   A finding that a parent has a diagnosed cognitive disorder, an extreme physical incapacity,

a more specific statute for termination of parental rights—even though State knew, through DHS reports, that Mother suffered from some type of mental illness.

¶8 After reviewing the record, we find § 1-4-904(B)(13) was inapplicable. Although the ISPs and DHS reports briefly mentioned that Mother's mental illness may contribute to her illegal substance abuse, her lack of parenting skills and neglect of her children, and to her children's removal from her custody, there was no evidence in the record that Mother was actually diagnosed with a mental illness. We decline to find that § 1-4-904(B)(13) applies in every case where mental illness is merely mentioned in DHS reports and ISPs, but not diagnosed. Furthermore, Mother's mental illness did not serve as the primary basis for the deprived children adjudication.

¶9 We hold the trial court's termination of Mother's parental rights based upon § 1-4-904(B)(5) was supported by clear and convincing evidence. The clear and convincing evidence demonstrated Mother failed to provide a safe and stable home for her children; she failed to complete parenting classes or schedule a mental health assessments and she failed to make proper parental decisions assuring the safety and proper care of her children. Mother also failed to address her substance abuse problems even though she was given ample time to correct these conditions. We further hold that it would be in the children's best interests to terminate Mother's parental rights.

¶10 For the foregoing reasons, we reject Mother's assertion that her due process rights were violated. We also reject the remainder of Mother's assignments of error. The trial court's termination order based on § 1-4-904(B)(5) is affirmed.

¶11 AFFIRMED.

BUETTNER, P.J., and JOPLIN, C.J., concur.

or a medical condition, including behavioral health or substance dependency shall not in

and of itself deprive the parent of parental rights.